**STATE of Tennessee, Appellee,**

v.

**Charles PERKINS, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Feb. 19, 1986.

Permission to Appeal Denied by Supreme Court June 23, 1986.

David K. Lower, Memphis, for appellant.

W.J. Michael Cody, Atty. Gen., Ann Lacy Johns, Asst. Atty. Gen., Nashville, Leland McNabb, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

TATUM, Judge.

The defendant, Charles Perkins, entered a negotiated guilty plea to two counts of armed robbery for which he was sentenced to two concurrent terms of ten years imprisonment. Additionally, a *nolle prosequi* was entered with respect to three other indictments. Pursuant to Rule 37(b)(2)(iv), T.R.Cr.P., the defendant explicitly reserved with the consent of the court the right to appeal the certified question of whether the armed robbery indictments should have been dismissed on the ground that the defendant was denied a speedy trial.

The basic facts of this case are undisputed. The defendant and another person were charged with armed robbery of several persons occurring on November 12, 1977 in Shelby County. On December 7, 1977, the defendant posted a $10,000 bond upon which a conditional forfeiture was later entered on March 14, 1978 because of the defendant's failure to appear for a scheduled court appearance. According to the defendant, his case was set for trial in March, 1978, at which time he failed to appear. On August 23, 1978, the conditional forfeiture was set aside and the defend-

ant was readmitted to $10,000 bail. The case was reset for trial on September 12, 1978. However, the defendant absconded to California and was not present on September 12, 1978 when his case was called for trial. The court revoked the defendant's bail and issued a capias for his arrest at that time.

A representative of the defendant's bonding company located the defendant in California and apprehended him in March, 1979. The representative of the bonding company was bringing the defendant back to Memphis but the defendant came into the custody of the Dallas/Fort Worth Airport security while changing flights at the Dallas/Fort Worth Airport. Airport security personnel subsequently requested information concerning the defendant's fugitive status from the Shelby County Sheriff's Department. Due to a computer error, the Fugitive Division of the Shelby County Sheriff's Department erroneously informed the Dallas/Fort Worth Airport authorities by teletype as follows:

"3–18–79 ...
REF: PERKINS, CHARLES EDWARD SUBJ. NO LONGER WANTED BY THIS DEPT. COMPUTER ERROR....
COMPUTER STILL
SHOWS OLD WARRANT NUMBERS ... SUBJ. HAS NO WANTS OR WARRANTS AT THIS TIME.
IF ANY FURTHER INFO NEEDED CONTACT OUR OFFICE NEXT DATE, 3/19/79 AFTER 8 A.M.
901–528–3700, LT. R. C. COLEMAN."

Based upon the above-quoted communication, the defendant was released from custody by the Dallas/Forth Worth Airport security personnel. At some subsequent time, the defendant returned to Memphis and was arrested in Memphis on July 25, 1984, in connection with the 1977 armed robbery charges.

In the meantime, Mr. Louis Eubanks, the original attorney employed by the defendant in 1978, died. Present counsel was employed in August, 1984. After two hear-

ings, the trial court denied a motion to dismiss the indictments on the ground that the defendant was denied a speedy trial. The guilty plea was entered on February 12, 1985.

■ On appeal, the defendant insists that the delay from March 18, 1979, the date when the Shelby County authorities informed the Texas authorities that the defendant was no longer wanted, until his apprehension in Memphis on July 25, 1984, was solely the fault of the State of Tennessee and that his constitutional right to a speedy trial was prejudiced by this delay of five years and four months. Both the federal and state constitutional rights to a speedy trial are evaluated by the use of a four-point balancing test set forth by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101 (1972), and adopted by the Tennessee Supreme Court in *State v. Bishop*, 493 S.W.2d 81, 83–85 (Tenn.1973). In this balancing test, the conduct of both the prosecution and the defendant are weighed. The four factors, which are not intended to be all-inclusive, are as follows: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and, (4) whether prejudice accrued to the defendant as a result of the delay.

The length of the delay, being the period of time between the defendant's arrest shortly after November 12, 1977 when the crime was committed and February 12, 1985 when the guilty plea was entered, is inarguably sufficient to trigger consideration of the other three factors. We will now examine them. As stated, the defendant's complaint involves only the time that elapsed from the time he was released by the Texas authorities until his rearrest in Memphis.

■ First, the reason for the delay. The State sought to try the defendant speedily and promptly but was unable to do so because the defendant failed to appear in court on March 14, 1978. By the time the defendant was located and the case was reset for trial on September 12, 1978, the defendant had fled to California and his whereabouts were unknown to the State.

In March, 1979, he was brought to Dallas from California by a representative of the bonding company. Due to a computer error, the airport authorities in Dallas were informed that the defendant was no longer wanted in Shelby County. Because of this information, the airport authorities released the defendant from custody, advising him that he was no longer wanted in Shelby County. The defendant returned to California and then sometime later returned to Memphis where he was arrested on July 25, 1984. The delay was not deliberate on the part of the State. We cannot say that it was due to negligence on the part of the State that the computer did not function properly. It is well known that modern computers are designed to eliminate human error and are procured, at least in part, for that purpose. Had the defendant not jumped bond twice in 1978 and had he appeared as originally directed by the court, the computer would not have had to have been relied upon. It is directly due to the defendant's felonious conduct in jumping bond that use of the computer was ever required and that the error ever occurred. We find it strange that the defendant had no curiosity as to the reason for the dismissal of these serious charges and that he failed to contact his employed attorney for an explanation. Presumably, had he done so, his attorney would have informed him that the charges were still pending.

The defendant claims that he asserted his right to a speedy trial to the airport authorities in Texas before they received the computer communications that he was no longer wanted in Shelby County. This assertion is entitled to very little weight. First, because the defendant deliberately attempted to prevent the State of Tennessee from providing him a speedy trial by absconding to California and second, because an assertion of his right to a trial in Tennessee through Texas airport authorities or policemen was of little effect. The

Texas authorities had no standing to grant him a trial. The defendant quite simply did not assert his right to a speedy trial to the court with jurisdiction to grant him one; rather, he failed to appear as directed by the court to receive an early trial which the State attempted to provide.

With regard to whether the defendant was prejudiced by the delay, he claims that he went to Nashville on the date the crime was committed with four individuals who have since disappeared. He says that these individuals would have furnished him an alibi if they could now be located.

We observe that no attempt was made by the defendant to procure the file of Mr. Eubanks, who was representing him in 1978 when the State attempted to try him. Moreover, there is no showing that the court file contained any subpoenas issued on the defendant's behalf for these four people in 1978. In short, no effort was made by the defendant to disclose what the testimony of these people would have been or to show that their presence was actually desired for trial in 1978. The defendant testified that he had not seen any of the four individuals since 1977, so there is nothing to support the defendant's contentions that these alleged alibi witnesses became unavailable after he was released from custody by Texas airport authorities in March, 1979. An investigator hired by the defendant testified that he looked for these people and found only a trace of information concerning one of the four individuals. That individual had been dishonorably discharged from the Navy at a time not disclosed by the investigator. The record does not clearly establish that the other three individuals actually existed.

With regard to these alleged alibi witnesses, we note that the trial judge did not accredit the testimony of the defendant. In addition to these armed robbery charges, the defendant had been convicted for first-degree murder in the commission of a robbery and attempt to commit robbery.

In balancing these four factors, we find that the reason for the delay lies more with the defendant than with the State. We are also convinced, as was the trial judge, that the defendant did not desire a speedy trial but instead deliberately attempted to avoid any trial. Furthermore, it's improbable that the defendant was prejudiced at all by the delay.

The judgment of the trial court is affirmed.

WALKER, P.J., and DWYER, J., concur.